**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

MARYLAND CASUALTY COMPANY,

        Plaintiff,

v.                                                                    CIVIL ACTION NO.   2:13-cv-05395

DOLORIS SHAMBLEN, et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Now before the court is Defendant Doloris Shamblen's Motion to Dismiss [Docket 10]. The motion is ripe for review. For the reasons set forth below, the motion to dismiss [Docket 10] is **GRANTED**.

    **I.  Background**

        **A.  Factual History**

This is a declaratory judgment action arising out of a fire that took place on March 24, 2012 at a rental home owned by defendant Doloris Shamblen at 2 Arlington Avenue, Charleston, West Virginia. Nine people were killed in the fire, including several minor children, and one person survived. At the time of the fire, the plaintiff, Maryland Casualty Company ("MCC"), had issued Precision Portfolio Policy No. PPS42016544 ("the policy") to Ms. Shamblen. Ms. Shamblen was also in possession of Premises Liability Insurance on the Arlington property, issued by SAFE Insurance Company.

According to the complaint, the policy was issued to provide Commercial Property Coverage and Commercial General Liability Coverage for two office buildings: one at State Road 81, Mammoth, West Virginia, and one at Route 60, Shrewsbury, West Virginia. (*See* Compl. for Decl. J. ("Compl.") [Docket 1] ¶10). MCC contends that this policy did not apply to the property at 2 Arlington Avenue.

There were a number of communications between Ms. Shamblen's attorneys and MCC that are relevant to the motion to dismiss. On April 17, 2012, Ms. Shamblen's attorney contacted MCC "to ask if any policies provided by [MCC] may provide coverage for [the Arlington fire]." (*See* April 17 Letter [Docket 17-1]). It also requested that MCC and/or any other companies insuring Ms. Shamblen be put "on notice of the event so that response as to the existence of potential coverage for this event can be made to [Ms. Shamblen] via [her attorney]." (*See id.*). On June 19, 2012, MCC responded to Ms. Shamblen's attorney and asked to be kept apprised of any developments with regard to the Arlington fire. (*See* June 19 Letter [Docket 1-9], at 2). In that letter, MCC also reserved all rights with respect to the Arlington fire. (*See id.*). On June 20, 2012, MCC canceled the policy. (*See* Notice to Lienholder/Mortgagee/Additional Insured/Certificate Holder [Docket 1-11]). On June 25, 2012, Ms. Shamblen's attorney informed MCC that "in addition to the City of Charleston, inspections have taken place by a fire investigator on Ms. Shamblen's behalf obtained through Safe Insurance and . . . six of the nine potential estate claimants are represented by counsel and have indicated that they are using a single fire investigator who has also reviewed the scene." (*See* June 25 Letter [Docket 16-2]).

Subsequently, on September 11, 2012, Ms. Shamblen's counsel contacted MCC requesting that MCC reinstate the policy. (*See* September 11 Letter [Docket 16-3]). The letter stated:

2

> As you can see, it certainly appears that [MCC] made every effort to find a reason to cancel this commercial policy after the fire event of earlier this year . . . . Ms. Shamblen has been forced to find replacement coverage with another carrier at a significantly increased premium. I would like to explore with you whether the company will remedy this situation for Ms. Shamblen and accordingly ask that you respond with a proposal for accomplishing such.

(*See id.*). MCC responded on September 25, 2012, asserting that the Arlington property was not covered by the policy and stating that "[b]y her tender, Ms. Shamblen now seeks coverage for 2 Arlington, and more specifically seeks coverage for the loss and claims arising from the March 24, 2012 fire. As Ms. Shamblen never disclosed this risk, as the Policy was never intended to cover risks such as 2 Arlington, this represents a material change in known risk exposure that warrants cancellation of the Policy." (September 25 Email [Docket 16-4], at 1) (internal quotation marks omitted).

There are communications referenced by the parties in later letters which are not in the record presently before the court. The next letter filed as an exhibit by the parties was a February 25, 2013 letter from Ms. Shamblen's attorney to MCC regarding the policy's cancelation. (*See* February 25 Letter [Docket 16-5]). This letter indicated that Zurich, MCC's parent company, had not supplied Ms. Shamblen with requested information regarding the cancellation of the policy. (*See id.* at 2). It also stated:

> In our telephone discussion of November 8, 2012, you stated that you, as coverage counsel, had not previously been aware that Zurich had already provided defense counsel to Ms. Shamblen. In our telephone discussion of January 2, 2013 you offered that if Ms. Shamblen withdrew her request for coverage for the fire even that Zurich would reinstate her commercial policy. I have conferred with Ms. Shamblen about Zurich's offer and must decline it.
>
> At this point it is respectfully requested that Ms. Shamblen's policy be reinstated without the required prerequisite that she withdraw her request for coverage for the fire event.

3

(*Id.*). MCC responded on March 15, 2013, providing its reasons for asserting that the policy did not cover the Arlington fire. (*See generally* March 15 Letter [Docket 16-6]). The letter additionally argued that there were inaccuracies in the February 25 letter, and specified that MCC "never offered . . . to reinstate Shamblen's policy," and "never demanded a *quid pro quo* exchange, conditioning reinstatement on Shamblen's withdrawing her claim for coverage under the policy." (*Id.* at 12). It goes on to say that the "February 25, 2013 letter concludes by rejecting an offer that was never made. Be that as it may, it is clear from your letter that our discussions on this point have concluded." (*Id.*). This is the last communication between the parties provided to the court.

### B. Procedural History

MCC seeks two declaratory judgments from the court. First, it seeks "a declaration that it has no duty to defend and/or indemnify Shamblen under the MCC Policy for any claims arising out of the Arlington fire, including but not limited to any claims of the Estates of A.C.C., K.C., T.C., J.C., E.J., Em.J, A.S., G.S. and M.S., as well as L.J.-I., individually." (Compl. for Decl. J. [Docket 1] ¶32). Second, it seeks a declaration that "Shamblen sought to materially change the risk accepted by MCC under the Policy, which warranted [its] cancellation." (*Id.* ¶36). MCC also requests costs and attorney's fees. (*See id.* at 8).

The instant motion to dismiss was filed by Ms. Shamblen under Federal Rule of Civil Procedure 12(b)(1), alleging that this court does not have subject matter jurisdiction over the matter. Specifically, it argues that Count I, requesting a declaration that the policy does not cover any potential claims arising out of the Arlington fire, is not ripe. In the alternative, it requests that this court refrain from exercising its discretionary jurisdiction over this case. It also argues that Count II, regarding the cancellation of the policy, is moot and/or not ripe.

## II. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(1), a party may file a motion to dismiss for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The plaintiff bears the burden of proving that subject matter jurisdiction exists. *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). In considering a motion to dismiss filed under Rule 12(b)(1), the court "is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding into one for summary judgment." *Id.* The court should grant the motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.* Once a party challenges a federal court's subject matter jurisdiction, "the district judge is not obliged to accept the plaintiff's allegations as true and may examine the evidence to the contrary and reach his or her own conclusions on the matter." 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1350, at 188-98 (3d ed. 2004).

## III. Motion to Dismiss

### A. Count I of the Complaint

In Count I of the complaint, MCC requests a declaration that the policy it issued to Ms. Shamblen does not cover the Arlington fire. Ms. Shamblen argues that this count is not ripe because no complaints have been filed against Ms. Shamblen regarding the fire (*see* Def. Doloris Shamblen's Mem. in Supp. of Mot. to Dismiss ("Mem. in Supp.") [Docket 11], at 2) and because Ms. Shamblen has not "demanded" coverage from MCC (Def. Doloris Shamblen's Reply Mem. in Supp. of Mot. to Dismiss ("Def.'s Reply") [Docket 17], at 2-3). MCC contends that Ms. Shamblen has made a demand for coverage under the policy and that this creates "an actual case or

controversy between parties having adverse legal interests of sufficient immediacy[.]" (Mem. of Pl. Maryland Cas. Co. in Resp. to Def. Doloris Shamblen's Mot. to Dismiss ("Pl.'s Mem.") [Docket 16], at 3). Both parties cite to numerous cases that they claim support their position.

In order to address Ms. Shamblen's ripeness argument, I must first examine the history of declaratory judgments and how they present a "case or controversy" under Article III of the Constitution. The Federal Declaratory Judgment Act was originally thought by many to be unconstitutional. *See Anway v. Grand Rapids Railway Co.*, 179 N.W. 350 (Mich. 1920) (finding a Michigan statute allowing declaratory judgments unconstitutional); Edwin Borchard, *The Constitutionality of Declaratory Judgments*, 31 Colum. L. Rev. 561 (1931) (discussing early questioning of the constitutionality of declaratory judgments). The Act allows that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. 2201(a) (2012). Although early Supreme Court cases questioned the constitutionality of the declaratory judgment and whether it fulfilled the "case or controversy" requirement of Article III (*see Liberty Warehouse Co. v. Grannis*, 273 U.S. 70 (1927)), the Court eventually upheld declaratory judgments as constitutional (*see Nashville, C. & St. L. Ry. v. Wallace*, 288 U.S. 249, 264-65 (1933); *Fidelity Nat'l Bank & Trust Co. v. Swope*, 274 U.S. 123, 134 (1927)). As the Court explained, "[w]hile ordinarily a case or judicial controversy results in a judgment requiring award of process of execution to carry it into effect, such relief is not an indispensable adjunct to the exercise of the judicial function." 274 U.S. at 132. Therefore, "[w]henever the law provides a remedy enforceable in the courts according to the regular course of legal procedure, and that remedy is pursued, there arises a case within the meaning of the

6

Constitution, whether the subject of the litigation be property or status." *Id.*; *see also Nashville, C. & St. L. Ry.*, 288 U.S. at 264 ("As the prayer for relief by injunction is not a necessary prerequisite to the exercise of judicial power, allegations of threatened irreparable injury which are material only if an injunction is asked, may likewise be dispensed with if, in other respects, the controversy presented is, as in this case, real and substantial."); *Petition of Kariher*, 131 A. 265, 268 (Pa. 1925) ("The distinctive characteristic of the declaratory judgment is that the declaration stands by itself; that is to say, no executory process follows as of course. Again, in order to obtain a declaration, it is not required that an actual wrong should have been done, such as would give rise to an action for damages, and no wrong need be immediately threatened, such as would be the proper basis for an injunction. In other words, a 'cause of action,' in the sense in which that term is ordinarily used, is not essential to the assumption of jurisdiction in this form of procedure.").

In a declaratory judgment action,

> [i]t is, of course, essential that the federal jurisdiction extend to the suit. It is necessary that the parties have a definite and adverse legal interest which will be conclusively affective and determined by the judgment. All the elements of a litigation must be present; only the prayer for relief is different.

Edwin Borchard, *The Federal Declaratory Judgments Act*, 21 Va. L. Rev. 35 (1934). Even a declaratory judgment action must therefore be ripe in order for the courts to hear it. In the insurance context,

> [w]here there is a concrete, contested issue, a definite assertion of legal rights, and a positive denial of them, there is a justiciable controversy. There need not always be a fully developed controversy, but some act of the defendant must be sufficiently definite to constitute a genuine threat to the plaintiff's interests, and the plaintiff must show that the facts are sufficiently complete to warrant a grant of judicial relief.

7

20 John Alan Appleman & Jean Appleman, *Insurance Law and Practice* § 11353, at 316-18 (1980). "Where the plaintiff is merely in doubt as to his rights under a written instrument, such as a will, and there is either no one who disputes the claim or else some event must happen before the plaintiff's right fully accrues, the action is naturally considered as prematurely brought." Edwin Borchard, *Declaratory Judgments* 56-57 (2d ed. 1941).

Generally, "it may be said that the facts on which a legal decision is demanded must have accrued, for the principle of a declaratory judgment is that it declares the existing law on an existing state of facts." *Declaratory Judgments*, *supra*, at 56. This means that "[t]he danger or dilemma of the plaintiff must be present, not contingent on the happening of hypothetical future events—although it may involve future benefits or disadvantages—and the prejudice to his position must be actual and genuine and not merely possible or remote." *Id.*

Declaratory judgments have long been used to determine the rights of insurance companies and insureds. *See generally*, *e.g.*, *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227 (1937). However, although the courts have been clear that declaratory judgments may be used to determine parties' rights under insurance contracts, they have been less than clear about when a case or controversy exists between an insurance company and an insured. *See Declaratory Judgments*, *supra*, at 634 ("The fact that insurance contracts are often of long duration, involve fiduciary relationships, depend on representations, acts and conduct which the company finds it difficult to control, look to future contingencies and benefits and, in the event of loss, create new relationship between the insurer, the injured person or beneficiary and the insured or principal debtor, has produced legal uncertainties which the declaratory action has done much to allay.").

8

The United States Supreme Court has noted the difficulty of determining whether a declaratory judgment action is ripe, stating:

> The difference between an abstract question and a "controversy" contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

*Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

The point at which a declaratory judgment action regarding liability under an insurance policy ripens has long vexed the courts. Courts have alternately held: that an "imminent" lawsuit is sufficient for a declaratory judgment to be ripe, even if one has not yet been filed (*see State Farm Mutual Auto. Ins. Co. v. Sampson*, 305 F. Supp. 50, 52 (M.D. Fla. 1969)); that a declaratory judgment action is not ripe where no underlying complaint has been filed (*see Permanent Gen. Assur. Corp. v. Moore*, 341 F. Supp. 2d 579, 582 (D.S.C. 2004); *Georgia Am. Ins. Co. v. Johnson*, 712 F. Supp. 530, 532 (S.D. Miss. 1989)); that a declaratory judgment action is not ripe where no underlying complaint *or claim* has been filed (*see Columbian Fin. Corp. v. BancInsure, Inc.*, 650 F.3d 1372, 1385 (10th Cir. 2011)); that a disagreement over coverage is sufficient for a declaratory judgment to be ripe (*see Duhamel Broad. Enters. v. Markel Am. Ins.*, No. 8:06CV357, 2006 WL 3591314, at *3 (D. Neb. Dec. 11, 2006); *Icarom, PLC v. Howard Cnty., Md.*, 904 F. Supp. 454, 458 (D. Md. 1995)); that a claim being filed with an insurance company makes a declaratory judgment action sufficiently ripe (*see Standard Fire Ins. Co. v. Armstrong*, No. 3:12CV181-HEH, 2012 WL 3730644, at *3 (E.D. Va. Aug. 28, 2012); *Great Divide Ins. Co. v. AOAO Maluna Kai Estates*, 492 F. Supp. 2d 1216, 1225 (D. Haw. 2007); *Firemen's Ins. Co. of Washington, D.C. v.*

9

*Kline & Son Cement Repair, Inc.*, 474 F. Supp. 2d 779, 787 (E.D. Va. 2007)); and that a demand to indemnify makes a declaratory judgment action ripe for adjudication (*see Clarendon Nat. Ins. Co. v. United Fire & Cas. Co.*, 571 F.3d 749, 752 (8th Cir. 2009)). However, there is no precedent from the Fourth Circuit or Supreme Court regarding whether an underlying case or demand on the insurance company is required in order for a declaratory judgment action to ripen.

One of the cases Ms. Shamblen relies upon is *Union Insurance Co. v. Soleil Group, Inc.*, 465 F. Supp. 2d 567 (D.S.C. 2006). In *Soleil Group*, the plaintiff, Union Insurance, sought a declaratory judgment that it did not have a duty to defend or indemnify its insureds under a commercial general liability insurance policy. 465 F. Supp. at 569. The insureds, the Soleil Group, were the owners of a Sheraton Hotel in North Charleston, South Carolina. *Id.* The named individual defendants were guests of the hotel who contracted Legionnaire's Disease or Pontiac Fever from Legionella bacteria in the pool and/or hot tub water at the Sheraton Hotel. *Id.* At the time of the decision, no lawsuits had been filed against the Soleil Group regarding exposure to Legionella bacteria; however, the plaintiff filed the suit in anticipation of the individual defendants or other unknown guests of the hotel asserting such claims. *Id.* Union Insurance Company argued that the case was ripe because: (1) Soleil Group had insisted Union establish a claims file; (2) numerous claimants had communicated with Union claims adjusters about their claims; (3) some of the claimants had engaged counsel; (4) claimants had provided medical information or presented medical authorizations in support of their claims; (5) at least two claimants had significant medical expenses; and (6) Soleil Group had communicated with Union through counsel regarding its recognition of the claims to be made. *Id.* at 570.

The court, however, found that the case was not ripe. Because the duty to defend or indemnify under South Carolina law depends on the allegations in an underlying complaint, the court determined that it could not construe the policy in the absence of a complaint, and found that "the lack of an underlying complaint is determinative." *Id.* at 574-75. The court reasoned:

> In this action, no suit has been filed against the Soleil Group regarding exposure to Legionella bacteria. This court therefore cannot compare the allegations in the complaint to the policy language in order to determine whether Plaintiff has a duty to defend the Soleil Group. Plaintiff makes much of the fact that the individual defendants are likely to file suits against the Soleil Group and in fact have asserted they will do so in their formal pleadings. Even so, any attempt by this court to determine Plaintiff's duty without the benefit of an underlying complaint is impermissible due to the absence of a justiciable controversy.

*Id.* at 574.

MCC, on the other hand, relies on cases such as *T.H.E. Insurance Company v. Dowdy's Amusement Park*, 820 F. Supp. 238 (E.D.N.C. 1993). In *Dowdy's Amusement Park*, a girl suffered serious injuries in a go-kart accident at the amusement park. 820 F. Supp. at 239. The girl's family retained an attorney to represent them in making a claim against Dowdy's. *Id.* The attorney wrote to Dowdy's and their liability insurer, T.H.E. Insurance Company, and gave them notice that the family intended to pursue a claim but had not yet filed a lawsuit in connection with the accident. *Id.* The court found that the action was ripe despite the fact that no case had yet been filed. *Id.* at 240. The court explained that this finding was based upon the "realities of the claims adjustment process":

> In deciding this question the realities of the claims adjustment process must be taken into account. Until it is clear whether [the child's] injuries are covered by the potential defendant's liability policy, the injured third party does not know whether to conduct settlement negotiations with the defendant or the insurer. The insurer is on actual notice of the [child's] injuries, and unless it can obtain declaratory relief it must maintain a claim file until the expiration of the statute of limitations for those injuries. Moreover, the insurer is faced with the choice between undertaking

11

> potentially costly investigation and settlement negotiations on a claim for which there may be no coverage and waiting until suit is filed and losing the opportunity to investigate potential liability defenses while the evidence is still fresh. Finally, despite the defendant's opposition to this suit, a coverage determination now, rather than after suit is filed, permits defendant to decide whether it should pursue settlement on its own initiative or permit the insurer to conduct all negotiations.

*Id.* at 239.

I agree with the reasoning of the *Soleil Group* court. Like South Carolina, West Virginia law determines the duty to defend based upon the language of the underlying complaint. *See Aetna Cas. & Sur. Co. v. Pitrolo*, 176 W. Va. 190, 194, 342 S.E.2d 156, 160 (1986) ("As a general rule, an insurer's duty to defend is tested by whether the allegations in the plaintiff's complaint are reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policy."). The lack of an underlying complaint may not be determinative of whether a case or controversy exists; however, in this case no demands have been made on MCC (*see* Mem. in Supp. [Docket 17], at 2-3; April 17 Letter [Docket 17-1]). The exhibits produced by the parties indicate that Ms. Shamblen inquired whether the MCC policy provided coverage for the Arlington fire, not that she has made a demand under the policy. (*See* April 17 Letter [Docket 17-1]). In the correspondence between the parties, MCC asserts that "[b]y her tender, Ms. Shamblen now seeks coverage for 2 Arlington, and more specifically seeks coverage for the loss and claims arising from the March 24, 2012 fire" (September 25 Email [Docket 16-4], at 1); however, none of the materials submitted by the parties show that a demand has in fact been made on MCC.[1] The correspondence

---

[1] A document that appears to be a claim filed with MCC by Ms. Shamblen for the Arlington fire is attached to the complaint. (*See* Care Center Claims Report/Confirmation [Docket 1-8]). However, neither party has attached it to the motion to dismiss briefing or discussed its potential relevance to the instant motion. Additionally, Ms. Shamblen argued that "Ms. Shamblen has done nothing more than put MCC on notice of an event" (Mem. in Supp. [Docket 17], at 4), and MCC did not argue in response that a claim had been filed. Rather, it argued that the letters discussed in the factual section, above, made a "demand" on MCC. I have determined that this document is not material to my decision in this case, as MCC has not satisfied its burden of demonstrating that this case is ripe for review. *See Doe v. Virginia Dep't of State Police*, 713 F.3d 745, 758 (4th Cir. 2013) (stating that "the party bringing the suit bears the burden of

from Ms. Shamblen's counsel to MCC primarily focuses on the cancellation of the policy, which relates to Count II of the complaint, not Count I. (*See* February 25 Letter [Docket 16-5]). I **FIND** that without an underlying complaint or a demand on the insurance company, Count I of the complaint is not ripe for adjudication. The defendant's motion to dismiss is **GRANTED** with respect to Count I of the complaint.

### B. Count II of the Complaint

In Count II of the complaint, MCC seeks a declaration that its cancelation of the policy was proper. It argues that cancelation was warranted because "by seeking coverage of the MCC Policy for liability arising out of the Arlington fire, [Ms. Shamblen] sought to materially change the risk accepted by MCC under the Policy, which warranted cancellation of the MCC Policy." (Compl. [Docket 1] ¶35). The exhibits submitted by the parties indicate that Ms. Shamblen and MCC dispute the validity of the policy's cancellation. Additionally, Ms. Shamblen has argued that because of the cancellation, she had to purchase a new insurance policy at an increased premium. (*See* September 11 Email [Docket 16-3], at 1).

In order to maintain a declaratory judgment action under the Declaratory Judgment Act, a federal court must also have an independent basis for jurisdiction. *See* 28 U.S.C. § 2201(a). In this case, MCC has invoked the court's diversity jurisdiction, meaning that there must be complete diversity of the parties and an amount in controversy greater than $75,000. *See* 28 U.S.C. § 1332. The allegations contained in the complaint which relate to the amount in controversy are: (1) a statement that "the matter in controversy . . . exceeds the sum value of $75,000.00, exclusive of interest and costs" (Compl. [Docket 1] ¶6); and (2) that the limits of the policy were $1 million per occurrence and $2 million in aggregate (*Id.* at ¶11). No claims in the complaint relate to the value

---

proving ripeness").

13

or potential value of Count II; rather, MCC appears to be basing the amount in controversy on the value of the policy, which relates to Count I. Additionally, nothing contained in the exhibits attached to the motion to dismiss briefing demonstrates that Count II is valued at over $75,000.

"A plaintiff may aggregate smaller claims in order to reach [the $75,000] threshold" to obtain federal jurisdiction. *Shanaghan v. Cahill*, 58 F.3d 106, 109 (4th Cir. 1995); *see also* 28 U.S.C. § 1367. Section 1367(a) of Title 28 of the United States Code provides that

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). "Supplemental jurisdiction thus allows parties to append . . . claims over which federal courts would otherwise lack jurisdiction, so long as they form part of the same case or controversy as the federal claims." *Shanaghan*, 58 F.3d at 109 (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966)). Section 1367 also provides that district courts "may decline to exercise supplemental jurisdiction" in certain circumstances. 28 U.S.C. § 1367(c). "In particular, a court has discretion to dismiss or keep a case when it 'has dismissed all claims over which it has original jurisdiction.'" *Shanaghan*, 58 F.3d at 110 (quoting 28 U.S.C. § 1367(c)(3)).

Because I have determined that this court does not have jurisdiction over Count I of the complaint, I must decide whether to exercise supplemental jurisdiction over Count II. *See Shanaghan*, 58 F.3d at 112 (stating that "if some event subsequent to the complaint reduces the amount in controversy, such as the dismissal of one count based on the defendant's answer, the court must then decide in its discretion whether to retain jurisdiction over the remainder of the case").

> Here, courts should be guided by the same kind of factors that inform decisions in the supplemental jurisdiction context when the federal basis of a case disappears. In general, courts should weigh convenience and fairness to both parties, as well as the interests of judicial economy. In particular, it is important to consider whether the amount claimed in the complaint was made in good faith, or whether plaintiff was consciously relying on flimsy grounds to get into federal court. Another critical equitable factor is the existence of any state limitations bars to refiling in state court. Where, as here, a plaintiff might suffer serious prejudice from the dismissal of her action, courts should be more willing to retain the case despite the smaller amount in controversy. Next, courts should account for the amount of time and energy that has already been expended, and decide whether it might be more efficient to simply retain jurisdiction. Finally, other considerations may arise on a case-by-case basis, such as the existence of some significant issue of state law best resolved in state court, that could inform the trial court's determination whether to keep or dismiss the case entirely.

*Id.* (internal citations omitted).

None of these factors persuade me that this court should retain supplemental jurisdiction over Count II of the complaint. *See id.* at 110 (stating that "trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished"). Although the parties disagree regarding whether the policy was properly canceled, there have been no claims filed under the policy, and Ms. Shamblen has not filed a breach of contract claim regarding the policy's cancelation. There also do not appear to be any statute of limitations issues present here. MCC would thus not suffer serious prejudice from the dismissal of this action. Additionally, the time expended on this matter does not demonstrate that this court should retain jurisdiction over Count II. *See In re Conklin*, 946 F.2d 306, 322 (4th Cir. 1991) ("Needless decisions . . . should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. "). I therefore decline to exercise supplemental jurisdiction over Count II of the complaint.

## IV. Conclusion

Based upon the foregoing, Defendant Doris Shamblen's Motion to Dismiss [Docket 10] is **GRANTED**. The court **DIRECTS** that this action to be removed from the docket. All other pending motions in this case are **DENIED as moot**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

        ENTER:      March 27, 2014

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE