IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

MARYLAND CASUALTY COMPANY,

        Plaintiff,

v.                                        CIVIL ACTION NO.   2:13-cv-05395

DOLORIS SHAMBLEN, et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**
(*Plaintiff's Motion for Summary Judgment*, *Defendant Doloris Shamblen's Motion to Dismiss Count II of the Amended Complaint*, **and the Parties'** *Joint Motion to Vacate Amended Scheduling Order*)

Pending before the court is the plaintiff Maryland Casualty Company's ("MCC") Motion for Summary Judgment [Docket 68] and Defendant Doloris Shamblen's Motion to Dismiss Count II of the Amended Complaint [Docket 57]. Responses and replies have been filed, and both motions are ripe for review. For the reasons explained below, MCC's Motion for Summary Judgment [Docket 68] is **DENIED**. I **GRANT** summary judgment in favor of Ms. Shamblen as to Count I of the Amended Complaint. Ms. Shamblen's Motion to Dismiss Count II of the Amended Complaint [Docket 57] is **GRANTED**.

On April 7, 2015, the parties filed a joint motion to vacate the amended scheduling order until the court entered a ruling on the motions at issue in this order [Docket 57 & 68]. The parties' Joint Motion to Vacate Amended Scheduling Order [Docket 76] is **DENIED as moot**.

1

**I. Facts**

This case arises out of a deadly fire that occurred on March 24, 2012 at a residential rental property (the "Arlington Property") in Charleston, West Virginia owned by Ms. Shamblen. (*See* Am. Compl. [Docket 44], at 4). At the time of the fire, the Arlington Property was covered by insurance issued by SAFE Insurance Company. (*Id.*). Ms. Shamblen also owned three office buildings in West Virginia. (*Id.* at 3-4). Two of those office buildings were covered by MCC Commercial Property Coverage and Commercial General Liability policies beginning in 2003, and the third office building was covered under that same insurance by way of an Endorsement beginning in 2008. (*Id.* at 4).

Ms. Shamblen first applied for the MCC policies on April 1, 2003, when she did not yet own the Arlington Property. (*See* MCC's Mem. of Law in Supp. of its Mot. for Summ. J. ("MCC's Mem. in Supp.") [Docket 69], at 8). When asked on the application whether there existed "[a]ny Commercial operation or property owned, leased, or occupied that is not covered under this policy[,]" Ms. Shamblen answered "[n]o." (Ex. 1 MCC Appl. [Docket 68-1], at 18). The MCC policies were renewed annually through April 1, 2013. (*Id.*). However, there is no evidence that Ms. Shamblen was asked this question again.

As noted above, the MCC insurance consisted of several policies, including a Building and Personal Property Form and a Commercial General Liability Coverage Form. (Ex. 2 MCC Ins. [Docket 68-2], at 23, 64). Ms. Shamblen's three office buildings were scheduled in the Commercial General Liability Coverage Form. (*Id.* at 63). The insurance renewals did not

2

specifically identify the Arlington Property as included. However, Ms. Shamblen contends that MCC must nevertheless defend and indemnify her for damages arising from the fire.[1]

After Ms. Shamblen's attorney provided MCC with a tender of defense and indemnity concerning this matter, MCC cancelled her insurance for the stated reason: "The insured owns and manages property that is not scheduled to this policy, this represents a material change in known risk exposure, and the polciy [sic] will be cancelled[.]" (Ex. 6 Cancellation Notice [Docket 68-6], at 3; *see* Ex. 3 Tender [Docket 68-3], at 3). Ms. Shamblen argues that this termination was unlawful and has asserted counterclaims against MCC for breach of contract and breach of the implied covenant of good faith and fair dealing. (*See* Def. Doloris Shamblen's Answer to Am. Compl. & Countercl. [Docket 59], at 3-6).

By way of this lawsuit, MCC requests the court to view the insurance as one policy and to declare that "MCC has no duty to defend and/or indemnify Shamblen under the MCC Policy for any claims arising out of the Arlington Property Fire[,]" (*see* Count I of Am. Compl. [Docket 44], at 6-7), and that "MCC's cancellation of the MCC Policy was warranted[,]" (*see* Count II of Am. Compl. [Docket 44], at 7). (MCC's Mot. for Summ. J. [Docket 68], at 2).

**II. Standards of Review**

    **A. Summary Judgment**

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

---

[1] There are currently several cases pending against Ms. Shamblen in the Circuit Court of Kanawha County, West Virginia. (*See* Def. Doloris Shamblen's Mot. to Supplement R. [Docket 72], at 1-2).

249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

### B. Motion to Dismiss

A motion to dismiss filed under Rule 12(b)(6) tests the legal sufficiency of a complaint or pleading. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). Federal Rule of Civil Procedure 8 requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). As the Supreme Court stated in *Ashcroft v. Iqbal*, that standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986) for the proposition that "on a motion to dismiss,

4

courts 'are not bound to accept as true a legal conclusion couched as a factual allegation'"). A court cannot accept as true legal conclusions in a complaint that merely recite the elements of a cause of action supported by conclusory statements. *Iqbal*, 556 U.S. at 677-78. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). To achieve facial plausibility, the plaintiff must plead facts that allow the court to draw the reasonable inference that the defendant is liable, and those facts must be more than merely consistent with the defendant's liability to raise the claim from merely possible to probable. *Id*.

In determining whether a plausible claim exists, the court must undertake a context-specific inquiry, "[b]ut where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). A complaint must contain enough facts to "nudge[] [a] claim[] across the line from conceivable to plausible[.]" *Twombly*, 550 U.S. at 570.

**III. Discussion**

I will first address MCC's summary judgment argument concerning its request for a declaration that it has no duty to indemnify and defend Ms. Shamblen. Then, I will address both MCC's summary judgment argument and Ms. Shamblen's dismissal argument concerning MCC's request for a declaration that its cancellation of Ms. Shamblen's insurance was warranted.

**A. MCC's Motion for Summary Judgment [Docket 68]: MCC's Duty to Indemnify and Defend Ms. Shamblen**

The West Virginia Supreme Court makes clear that, "[w]here provisions in an insurance policy are plain and unambiguous and where such provisions are not contrary to a statute,

5

regulation, or public policy, the provisions will be applied and not construed." Syl. pt. 1, *Kelly v. Painter*, 504 S.E.2d 171, 172 (W. Va. 1998) (citations and internal quotation marks omitted); *see Boggs v. Camden-Clark Mem'l Hosp. Corp.*, 693 S.E.2d 53, 57-58 (W. Va. 2010) ("As a general rule, we accord the language of an insurance policy its common and customary meaning. That is, '[l]anguage in an insurance policy should be given its plain, ordinary meaning.'") (citation omitted); *Blankenship v. City of Charleston*, 679 S.E.2d 654, 659 (W. Va. 2009) ("Where an insurance policy is clear and unambiguous, '[t]he court is bound to adhere to the insurance contract as the authentic expression of the intention of the parties, and it must be enforced as made where its language is plain and certain.'") (citation omitted)*; Essex Ins. Co. v. Tri-Area Amusement Co.*, No. 5:09CV23, 2010 WL 148381, at *5-6 (noting West Virginia Supreme Court's "'well-established' standard that the 'language in an insurance policy should be given its plain, ordinary meaning'") (citation omitted).

"Where the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." Syl. pt. 2, *Kelly*, 504 S.E.2d at 172 (citations and internal quotation marks omitted); *see Boggs*, 693 S.E.2d at 58 ("We accept the plain meaning of the policy provisions under review, without interpretation or construction, except where ambiguity warrants such further consideration of the policy language."). Since Ms. Shamblen "does not contend that any term or terms within [the MCC policies] is or are ambiguous[,]" the court must simply apply its plain language to this case. (*See* Ex. 8 Def. Doloris Shamblen's Resp. to MCC's First Set of Interrogs. & Reqs. for Prod. of Docs. [Docket 68-8], at 3). I **FIND** that no genuine issues of material fact exist, and, thus, my remaining inquiry is whether MCC is entitled to judgment as a matter of law.

6

### *i. Coverage of the Arlington Property*

I **FIND** that MCC is not entitled to judgment as a matter of law on Count I of the Amended Complaint. On its face, the MCC-issued insurance is made up of several distinct policies, only one of which is pertinent. That form is the Commercial General Liability policy. (*See* Ex. 2 MCC Ins. [Docket 68-2], at 64). By its plain language, the Commercial General Liability Coverage Form expressly insures "[a]n individual . . . with respect to the conduct of a business of which [that individual is] the sole owner." (*Id.* at 71 ("WHO IS AN INSURED . . . If you are designated in the Declarations as . . . [a]n individual, you or your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.")). As Ms. Shamblen correctly points out, MCC's Commercial General Liability policy, thus, provides coverage for her business of renting the Arlington Property, regardless of whether the property is scheduled within that form or policy. The Commercial General Liability Form states that "[t]his insurance applies to 'bodily injury' and 'property damage' only if . . . [t]he 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory' . . . [and] during the policy period." (*Id.* at 65). The Commercial General Liability "coverage territory" includes the entire United States. (*Id.* at 76). These provisions certainly encompass the Arlington Property located in Charleston, West Virginia.

Other courts agree. *Peterson v. Schimek*, 729 So.2d 1024, 1029-30 (La. 1999) (finding same language as in policy to cover non-scheduled rental property); *see Allcity Ins. Co. v. Borrello*, 798 N.Y.S.2d 121, 123 (N.Y. App. Div. 2005) (analyzing same language as in policy and stating, "[c]ontrary to Allcity's contention, the coverage provided by the policy to the insureds was not limited to the locations listed on its declaration page"); *Penn Star Ins. Co. v. Real Estate Consulting*

*Specialists, Inc.*, 1 F. Supp. 3d 1168, 1172-73 (D. Mont. 2014) (finding commercial general liability policy to cover non-scheduled apartment when within coverage territory of the United States).

Even MCC itself recognizes that its coverage reaches beyond insuring the scheduled properties. MCC states in its motion memorandum that "[t]he CGL coverage under Shamblen's MCC Policy was *a component* of coverage that *also* included property insurance for the three scheduled properties, none of which were the Arlington Property." (*See* MCC's Mem. in Supp. [Docket 69], at 13 n.1 (emphasis added); *id.* at 3 (stating that Shamblen "completed an electronic application to MCC . . . seeking Commercial Property Coverage *and* Commercial General Liability") (emphasis added)). Moreover, MCC makes an admission that the Arlington Property is covered in its stated reason for cancelling Ms. Shamblen's insurance: "The insured owns and manages property that is not scheduled to this policy, this represents a material change in known risk exposure, and the polciy [sic] will be cancelled[.]" (Ex. 6 Cancellation Notice [Docket 68-6], at 3; *see* Ex. 3 Tender [Docket 68-3], at 3). If the Arlington Property was not covered under the Commercial General Liability Form, then the Arlington Property fire would have no effect upon MCC's risk exposure as they assert that it did.

I find no merit in MCC's argument that the policy contains sufficient language to expressly exclude the Arlington Property from its general commercial coverage. "An insurer wishing to avoid liability on a policy purporting to give general or comprehensive coverage must make exclusionary clauses conspicuous, plain, and clear, placing them in such a fashion as to make obvious their relationship to other policy terms, and must bring such provisions to the attention of the insured." Syl. pt. 2, *Am. States Ins. Co. v. Surbaugh*, 745 S.E.2d. 179, 180 (W. Va. 2013)

8

(citations omitted). The Commercial General Liability policy's statement—that "we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply"—is not so "conspicuous, plain, and clear" as to exclude the Arlington Property. *See id.* This statement fails to meet the above standard. (*See* Ex. 2 MCC Ins. [Docket 68-2], at 64); *see, e.g.*, *Penn Star Ins. Co.*, 1 F. Supp. 3d at 1173 (finding non-scheduled property not excluded when policy contained insufficient limitation language). The Commercial General Liability Form covers the Arlington Property.

### ii. Summary Judgment

Therefore, MCC is not entitled to judgment as a matter of law as to this declaratory judgment claim, which "effectively grant[s] summary judgment on this issue in favor of the non-movant," Ms. Shamblen. *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 248 n.20 (3d Cir. 2007) (citing *National Expositions, Inc. v. Crowley Maritime Corp.*, 824 F.2d. 131, 133 (1st Cir. 1987) as "collecting cases recognizing that a 'district court has the legal power to render summary judgment . . . in favor of the party opposing a summary judgment motion even though he has made no formal cross-motion under rule 56'" and citing *Banks v. Lackawanna County Comm'rs.*, 931 F. Supp. 359, 363 n.7 (M.D. Pa. 1996) stating that "[a] district court may grant summary judgment in favor of a non-movant where it believes that the movant has had adequate notice of the grounds for that judgment, and where there is clear support for such judgment."); *see generally* Fed. R. Civ. P. 56(f)(1) ("After giving notice and a reasonable time to respond, the court may . . . grant summary judgment for a nonmovant.").

Federal Rule of Civil Procedure 56(f)(1) plainly requires the court to provide the parties with notice and time to respond before granting summary judgment for the nonmovant. Fed. R.

Civ. P. 56(f)(1). Here, the court finds that the parties have had sufficient notice and response time so as to grant summary judgment in Ms. Shamblen's favor, given Ms. Shamblen's request for such a very ruling in her response. *See Calvert v. W. Va. Legal Servs. Plan, Inc.*, 464 F.Supp. 789, 790 (S.D. W. Va. 1979) ("[S]ummary judgment may be rendered in favor of the opposing party even though he has made no formal cross-motion under Rule 56 if it appears from the papers, affidavits and other proofs submitted by the parties that there are no disputed issues of material fact and that judgment for the non-moving party would be appropriate as a matter of law.") (citations omitted); Wright & Miller, 10A Fed. Prac. & Proc. § 2720 (3d ed.) ("When there has been a [Rule 56] motion but no cross-motion, the judge already is engaged in determining whether a genuine issue of material fact exists and the parties have been given an opportunity to present evidence designed either to support or refute the request for the entry of judgment."); *id.* ("The weight of authority, however, is that summary judgment may be rendered in favor of the opposing party even though the opponent has made no formal cross-motion under Rule 56.") (footnote omitted); (Resp. of Def. Doloris Shamblen to Pl.'s Mot. for Summ. J. [Docket 70], at 10 (Ms. Shamblen writing, "Accordingly, for all of these reasons, this Court should deny MCC's motion for summary judgment and, instead, pursuant to Rule 56(f)(1) of the Federal Rules of Civil Procedure, should grant summary judgment to Defendant Doloris Shamblen, because there is no genuine dispute as to any material fact and because she is entitled to judgment on the issue of coverage under the MCC Policy as a matter of law.")). MCC has had the opportunity to address her arguments in its reply. Providing further notice to the parties would be a futile act.

Thus, I **DENY** MCC's motion for summary judgment as to Count I of the Amended Complaint, and I **GRANT** summary judgment in favor of Ms. Shamblen as to this count. I **FIND**

that MCC has a duty to indemnify and defend Ms. Shamblen in accordance with the terms of the MCC-issued insurance. *See Nationwide Mut. Ins. Co. v. Hatfield*, No. 5:03-0083, 2005 WL 2978046, at *2 (S.D. W. Va. Nov. 7, 2005) ("Under West Virginia law: '[a]s a general rule, an insurer's duty to defend is tested by whether the allegations in the plaintiff's complaint are reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policy.") (*citing Butts v. Royal Vendors, Inc.*, 504 S.E.2d 911 (W. Va. 1998)).

### B. MCC's Motion for Summary Judgment [Docket 68] & Ms. Shamblen's Motion to Dismiss [Docket 57]: MCC's Cancellation of Ms. Shamblen's Insurance

By way of its summary judgment motion [Docket 68], MCC also seeks a declaration that its cancellation of Ms. Shamblen's insurance was warranted. However, in her motion to dismiss [Docket 57], Ms. Shamblen argues that this count is an improper request for declaratory relief.

I agree with Ms. Shamblen. As she points out, "Count II of plaintiff's Amended Complaint seeks a judicial seal of approval of conduct that has already occurred." (Def. Doloris Shamblen's Mem. in Supp. of Mot. to Dismiss Count II of Am. Compl. [Docket 58], at 2). The MCC insurance at issue at the time of cancellation ran from April 1, 2012 to April 1, 2013. It is now the year 2015. Only past acts are implicated in this requested declaration. *See Tapia v. U.S. Bank, N.A.*, 718 F. Supp. 2d. 689, 695 (E.D. Va. 2010) ("[D]eclaratory judgments are designed to declare rights so that parties can conform their conduct to avoid future litigation,' and are untimely if the questionable conduct has already occurred or damages have already accrued.") (citation omitted).

Also, Ms. Shamblen has brought a counterclaim for damages against MCC for breach of contract and breach of the implied covenant of good faith and fair dealing concerning MCC's cancellation. *See McJunkin Corp. v. Cardinal Sys., Inc.*, 190 F. Supp. 2d 874, 879 (S.D. W. Va. 2002) ("Declaratory judgment actions are not improper when there is a potential lawsuit . . . but

11

where a potential lawsuit over the actual issues has become certain or imminent, a declaratory judgment action may suggest an improper race to the courthouse.") (citations omitted). "[A] declaratory judgment action is appropriate when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Travelers Indem. Co. v. Miller Bldg. Corp.*, 221 Fed. Appx. 265, *267 (4th Cir. March 7, 2007) (citing *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996)) (internal quotations omitted)) (unpublished). This is no such instance. MCC, in effect, is requesting that the court grant declaratory relief, when there is a legal remedy available.

The Fourth Circuit has "long recognized the discretion afforded to district courts in determining whether to grant declaratory relief." *Id.* I exercise my discretion here and **FIND** that MCC is not entitled to judgment as a matter of law on Count II of the Amended Complaint. Therefore, I **DENY** MCC's motion for summary judgment on this matter [Docket 68], and I **GRANT** Ms. Shamblen's motion to dismiss this count [Docket 57].

**IV. Conclusion**

For the reasons explained above, MCC's Motion for Summary Judgment [Docket 68] is **DENIED**. I **GRANT** summary judgment in favor of Ms. Shamblen as to Count I of the Amended Complaint. Ms. Shamblen's Motion to Dismiss Count II of the Amended Complaint [Docket 57] is **GRANTED**. As a result, the parties' Joint Motion to Vacate Amended Scheduling Order [Docket 76] is **DENIED as moot**. The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: April 13, 2015

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE